CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

JUL 29 2008

JOHN F. CORCORAN, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| SHAMSIDDEEN ISIAH HATCHER, | ) | |
| Plaintiff, | ) | Civil Action No. 7:08CV00440 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| BRISTOL CITY SHERIFF'S OFFICE, | ) | |
| et. al., | ) | By: Hon. James C. Turk |
| Defendants. | ) | Senior United States District Judge |

Plaintiff Shamsiddeen Isiah Hatcher, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. §1983, with jurisdiction vested under 28 U.S.C. §1343. In his complaint, Hatcher alleges that officials at the Bristol, Virginia City Jail ("the jail") have interfered with his ability to exercise his religious beliefs by refusing his request for a "no pork" diet. Upon consideration of the complaint, the court finds that this action should be dismissed pursuant to 28 U.S.C. §1915A(b)(1) for failure to state a claim upon which relief may be granted.[1]

I

Hatcher alleges the following sequence of facts on which he bases his claims. Sometime in the last week of June 2008, Hatcher asked a member of the medical staff at the jail "to remove the pork from [his] diet for religious purposes." She told him that she could only order a change in his diet for medical reasons. Hatcher then filed a grievance, asking to have the pork removed from his diet. The head of medical responded that he could order dietary changes only for medical purposes.

---

[1] A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under §1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

1

Hatcher then appealed the medical staff response to the chaplain or the administrative officer, but got no response.

On July 10, 2008, Hatcher filed another grievance, complaining about the medical staff's refusal to remove pork from his diet and asked that the chaplain or the administrative officer "remove pork from my diet for religious preferences." The chaplain responded to the grievance, stating, "I asked [Hatcher] if his religion required a no pork diet and he said no that he was just tired of having it every day." Hatcher remembers asking the chaplain to remove the pork from his diet, and in response, the chaplain asked him "personal questions about [his] beliefs/religion that made [him] feel very uncomfortable. [Hatcher] then stopped [the chaplain] from asking personal questions by telling him that the grease was making [Hatcher] sick!" On July 21, 2008, Hatcher wrote a letter to the jail's administrative officer, Captain Linnen, asking to have the pork removed from his diet "for religious reasons."

That same day, July 21, deputies returned Hatcher's letter and his July 10 grievance to him. The captain had written across the bottom of the letter, "What is the religious reason you want no pork?" Hatcher appealed the chaplain's grievance response to the administrative officer, stating "I wanted to keep my beliefs confidential, but now I see that confidentiality is not possible!!! (Leviticus 11:1-8, Exodus 14:3-8)." The captain's response was: "Due to your statements to Chaplain Bradley I concur with his decision. A no pork tray is denied." Hatcher appealed this response to the sheriff, stating: "Other inmates get no pork trays due to religious beliefs. Captain Linnen is discriminating." The sheriff upheld the decision to deny Hatcher's requst, based on his conversation with the chaplain, indicating that his religion did not require a no pork diet. The sheriff responded, "We do not [accommodate] religious 'preferences.'"

In his § 1983 complaint, Hatcher explains that he wanted to keep his religious preferences confidential because "religious folks are persecuted." He states that his "pork eating habits are destroying the relationship with his father," who is a Shiite Muslim. He wants to get closer to his father, but cannot begin reading the "holy Quaran [sic]" until he "purifies" himself by not eating "unclean" animals. Hatcher states that he himself is a Christian, who believes that the Bible as the word of God "strongly suggests" that followers not eat or touch "unclean animals." Hatcher says that other inmates at the jail receive no pork trays. He feels that denial of his request for a no pork diet discriminated against him based on his religion and his race (he is black).

II

To state a cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). As an initial matter, Hatcher cannot sue one of his named defendants, the Bristol City Sheriff's Office, because this entity is not a "person" subject to suit under § 1983. See McCoy v. Chesapeake Correctional Center, 788 F. Supp. 890 (E.D. Va. 1992). As plaintiff has not named any other defendants, his action would ordinarily be dismissed. However, inasmuch as the court finds that his allegations may state a claim against someone, the case shall not be dismissed at this time. Hatcher also names individual jail officials as defendants. While these individuals are "persons" for purposes of § 1983, Hatcher's allegations do not indicate that their actions have violated any constitutionally protected right.

Apparently, Hatcher believes that defendants' actions violated his right to free exercise of his religious beliefs. The Free Exercise Clause of the First Amendment provides that "Congress

3

shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. Amend. I. In order to establish a right under the Free Exercise Clause, Hatcher must make two threshold showings: (1) that he sincerely holds his religious beliefs, and (2) that his claims are rooted in religious belief and are not "purely secular." Wisconsin v. Yoder, 406 U.S. 205, 215-16 (1972); see also Cruz v. Beto, 405 U.S. 817, 822 (1977) (finding that inmates retain right to free exercise of sincere religious beliefs). Inmates have a constitutional right to receive a nutritious diet in keeping with their sincere religious beliefs. Lovelace v. Lee, 472 F.3d 174, 198-99 (4th Cir. 2006); Ross v. Blackledge, 477 F.2d 616, 618-19 (4th Cir. 1973). An inmate must first demonstrate, however, that the requested diet is based in his sincere, religious belief and that the diet choices currently available to him substantially burden his religious practice. See Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 450 (1988) ("[I]ncidental effects of government programs, which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs" are insufficient to state a claim under Free Exercise Clause).

In protecting inmates' constitutional rights, federal courts must give proper deference to prison officials' expertise in furthering the valid needs of the penological system. Bell v. Wolfish, 441 U.S. 520, 562 (1979). Even "when a prison regulation impinges on [an inmate's] constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49 (1987); Turner v. Safley, 482 U.S. 78, 89 (1987). Prison officials need not provide an inmate with a special religious diet if he can voluntarily pick and choose among the items offered on the regular prison menu and maintain a nutritionally adequate diet in conformance with his religious beliefs. See Abernathy v. Cunningham, 393 F.2d 775, 778

4

(4th Cir. 1968). Furthermore, prison officials' negligent or accidental interference with an inmate's ability to exercise his religious beliefs does not state any claim actionable under § 1983. Lovelace, 472 F.3d at 194.

Under these principles, Hatcher's allegations fail to state any claim that the actions of jail officials, as described in the complaint and attachments, deprived him of the right to practice his sincerely held religious beliefs. First, Hatcher does not demonstrate that his personal religious beliefs require him to avoid pork. He states that he is a Christian, but does not indicate that eating pork somehow violates his personal Christian beliefs or how eating pork interferes with his ability to practice Christianity. He admits that his desire to "purify" himself so that he can read the Quran has nothing to do with his personal, religious beliefs, but rather, arises from his desire to grow closer to his Shiite father. The descriptions of Hatcher's beliefs in this complaint simply do not demonstrate that a diet including pork substantially burdens his ability to practice those beliefs.

Second, Hatcher does not demonstrate that he is unable to obtain an adequate diet in keeping with his religious beliefs by simply avoiding the pork and eating the other items on the jail's regular menu. The court takes judicial notice of the fact that providing special diets to particular inmates requires jail officials to expend extra money and time that is not required if the inmate can accommodate his dietary needs from the regular menu. Thus, the court can easily conceive of legitimate interests furthered by the jail's practice of ordering special pork-free diets only for those inmates who demonstrate that their religious practice is substantially burdened by the regular jail menu.

Third, and most importantly, Hatcher did not provide jail officials with sufficient information about his religious beliefs before filing this complaint. He cannot expect to keep his religious beliefs

confidential and, at the same time, receive special accommodation for those beliefs while in jail. Hatcher may now have a sincere, religious belief that he, as a Christian, should avoid pork, based on the Bible verses that he cites. He has not expressed such a belief in this complaint, however, and he clearly did not inform jail officials of such a belief when asking them in his grievances and letter to accommodate his desire for a no pork diet. Instead, he made vague mention of "religious reasons" and "religious preferences." He did not state what his religion was or that it required him to avoid pork.[2] If defendants' denial of his request incidently affected his ability to exercise a religious belief of which they were not aware, such unintentional interference with his religious exercise is not conduct actionable under § 1983. Based on the foregoing, the court will dismiss Hatcher's Free Exercise claims, pursuant to § 1915A(b)(1), for failure to state any actionable claim.

III

Hatcher also asserts a claim of discrimination. Officials may treat similarly situated inmates differently only if the basis for the different treatment is rationally related to a legitimate interest of the state. See Moss v. Clark, 886 F.2d 686 (4th Cir. 1989). Conclusory allegations of discriminatory intent are insufficient to state a claim. Chapman v. Reynolds, 378 F. Supp 1137, 1140 (W.D. Va. 1974) ("A claim of racial discrimination is a grievous charge, which certainly can rise to constitutional dimensions; but absent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated.").

---

[2]Because Hatcher's grievances did not inform jail officials of his religion or its dietary requirements, he has not exhausted administrative remedies available to request true religious accommodations at the jail. See 42 U.S.C. § 1997e(a) (requiring that inmate exhaust available administrative remedies before bringing lawsuit concerning jail conditions).

6

Case 7:08-cv-00440-JCT-mfu    Document 5    Filed 07/29/08    Page 6 of 7    Pageid#: 18

Hatcher's allegations fail to state any constitutional claim that jail officials discriminated against him on any basis. The mere fact that other inmates receive a no pork diet does not prove discrimination. Inmates receiving a special diet for religious reasons have likely demonstrated to the chaplain that their religious beliefs require such a diet. As discussed, Hatcher made no such showing to prison officials or to the court. Certainly, officials are reasonable in refusing to provide a special diet for an inmate until that inmate shows a need for such distinctive treatment. Moreover, Hatcher's allegations about jail officials' responses to his requests for a no pork diet do not offer any factual support for his conclusory statement that they denied his requests because he is black. The court will, therefore, dismiss Hatcher's claim of unequal treatment, pursuant to § 1915A(b)(1). An appropriate order shall be entered this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 29th day of July, 2008.

/s/ James C. Turk
Senior United States District Judge